UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
CRISPIN PORTER & BOGUSKY LLC, a :
limited liability company; MDC PARTNERS :
INC., a corporation; MITCHELL GENDEL, :
as an individual and in his capacity as a : 18-MC-384 (VSB)
company officer; DUSTY NELSON, as an :
individual and in her capacity as a company : **OPINION & ORDER**
officer; and DOES 1 through 10 inclusive, :
whose true names are unknown, :
:
                                Petitioners, :
:
                   -against- :
:
RALPH M. WATSON, an individual, :
:
                                Respondent. :
:
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/10/2019

Appearances

Howard Jeffrey Rubin
Davis & Gilbert LLP
New York, New York
*Counsel for Petitioners*

Michael W. Ayotte
Law Offices of Michael W. Ayotte
Hermosa Beach, California
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

       Petitioners Crispin Porter & Bogusky LLC ("CP+B"), MDC Partners, Inc. ("MDC"), Mitchell Gendel, and Dusty Nelson (collectively, "Petitioners") initiated this miscellaneous action to compel Respondent Ralph M. Watson ("Respondent") to arbitrate claims alleged in a lawsuit filed in the United States District Court for the District of Colorado ("Colorado Action"). Before me is Petitioners' motion to compel arbitration and to dismiss, or, in the alternative, to

1

stay the Colorado Action. For the reasons discussed below, Petitioners' motion is GRANTED IN PART and DENIED IN PART. Because Respondent's claims fall within the scope of a valid agreement to arbitrate, Petitioners' motion to compel arbitration is GRANTED. Because I do not have the authority to dismiss or stay the Colorado Action, Petitioners' motion to dismiss or stay that action is DENIED without prejudice.

## I. Background

Petitioner CP+B is an advertising agency and a wholly owned subsidiary of Petitioner MDC, (Colo. Compl. ¶¶ 4–5);[1] Petitioner Gendel is general counsel of MDC, (*id.* ¶ 6); and Petitioner Nelson is the global CFO of CP+B, (*id.* ¶ 7). Respondent was hired by Petitioner CP+B as its Boulder Chief Creative Officer in approximately April 2014. (*Id.* ¶ 9.) CP+B extended an offer of employment to Respondent on March 24, 2014. (Resp't Decl. ¶ 7; *see also id.* Ex. 1.)[2] Shortly thereafter, CP+B sent Respondent an employment agreement, setting forth the terms and conditions of Respondent's employment ("Employment Agreement" or "Agreement"). (*See generally* Emp't Agr't.)[3] Respondent signed and returned the Employment Agreement to CP+B. (Resp't Decl. ¶¶ 10–11; Emp't Agr't 18.) According to Respondent, the Employment Agreement, dated April 2, 2014, was "fully executed." (Resp't Decl. ¶ 10.)

---

[1] "Colo. Compl." refers to the Amended Complaint for Age Discrimination; Reverse Sex Discrimination; Civil Conspiracy; Defamation; Intentional Interference with Contract; Intentional Interference with Prospective Economic Advantage; Intentional Infliction of Emotional Distress; Wrongful Termination in Violation of Public Policy; and Breach of Contract, filed by Respondent in the United States District Court for the District of Colorado on July 19, 2018, a copy of which is attached as Exhibit B to the Rubin Declaration. (Doc. 7-2.) "Rubin Declaration" or "Rubin Decl." refers to the Declaration of Howard J. Rubin, filed August 23, 2018. (Doc. 7.)

[2] "Respondent Declaration" or "Resp't Decl." refers to the Declaration of Ralph M. Watson in Support of His Response to Petitioners' Motion to Compel Arbitration, filed September 28, 2018. (Doc. 20-1.)

[3] "Emp't Agr't" refers to the Employment Agreement, which is attached as Exhibit 2 to the Respondent Declaration, filed September 28, 2018. (Doc. 20-3.)

2

Section 18 of the Employment Agreement sets forth the terms of the parties' agreement to arbitrate certain disputes (the "Arbitration Provision"). (Emp't Agr't 15–17.) Specifically, part (a) of the Arbitration Provision provides:

> If any dispute arises between the parties . . . including, but not limited to, any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement (including, without limitation, any claim regarding or related to the interpretation, scope, effect, enforcement, termination, extension, breach, legality, remedies and other aspects of this Agreement or the conduct and communications of the parties regarding this Agreement and the subject matter of this Agreement), the exclusive remedy for resolving any such dispute . . . shall be arbitration at the offices of JAMS, the Resolution Experts. . . . The prevailing party in any arbitration shall be entitled to receive its reasonable attorneys' fees and costs from the other party(ies) as awarded by the arbitrator.

(*Id.* at 15–16.) Part (b) of the Arbitration Provision, which is entirely in bold text, states:

> [Respondent] has read and understands this [Arbitration Provision] which discusses arbitration. [Respondent] understands that by signing this Agreement, [Respondent] agrees to submit any claims arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach or termination thereof, or his employment or the termination thereof, to binding arbitration . . . and relates to the resolution of all disputes relating to all aspects of the employer/employee relationship, including but not limited to the following:
>
> (i) Any and all claims for wrongful discharge of employment, breach of contract, both express and implied; breach of the covenant of good faith and fair dealing, both express and implied; negligent or intentional infliction of emotional distress; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; and defamation;
>
> (ii) Any and all claims for violation of any federal, state or municipal statute, including, without limitation, Title VII of the Civil Rights Act of 1964, . . . the Age Discrimination in Employment Act of 1967, . . . and
>
> (iii) Any and all claims arising out of any other Federal, state or local laws or regulations relating to employment or employment discrimination.

(*Id.* at 16–17.)

In addition, Section 6(a) of the Employment Agreement discusses the termination of Respondent's employment, providing:

> In the event that [Respondent] is purportedly terminated for Cause and the arbitrator appointed pursuant to [the Arbitration Provision] determines that Cause as defined herein was not present, then such purported termination for cause shall be deemed a termination without Cause pursuant to Section 6(b) and [Respondent's] rights and remedies will be governed by Section 7(b), in full satisfaction and in lieu of any and all other or further remedies [Respondent] may have."

(*Id.* at 5.) Finally, Section 7(b) of the Employment Agreement continues the discussion of termination of Respondent's employment, providing:

> In the event of a termination of [Respondent's] employment by [CP+B] without Cause, [Respondent] shall be entitled to the following payments and benefits, subject to any Offsets:
>
> (i) as liquidated damages, his applicable Base Salary compensation when otherwise payable for a period commencing on the Termination Date and ending six (6) months thereafter (the "Severance Period"), payable on the regular salary payment dates during such period; and
>
> (ii) any unpaid reimbursable expenses outstanding as of the Termination Date.

(*Id.* at 6.)

In or around February 2018, after receiving anonymous allegations of sexual harassment against Respondent, CP+B terminated Respondent's employment for cause. (*Id.* ¶¶ 15–26.) On July 19, 2018, Respondent filed the Colorado Action in the United States District Court for the District of Colorado, bringing claims under the Age Discrimination in Employment Act of 1967 ('ADEA"), 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as well as various common law claims. (*See* Colo. Compl. ¶¶ 34–137.) On July 25, 2018, Petitioners filed a motion to compel arbitration in the Colorado Action. (Pet'rs' Mem. 7.)[4] Because the Arbitration Provision includes a requirement that "[s]uits to

---

[4] "Pet'rs' Mem." refers to the Memorandum of Law of Petitioners Crispin Porter & Bogusky LLC, MDC Partners Inc., Mitchell Gendel and Dusty Nelson in Support of Their Motion to Dismiss Respondent's Amended Complaint, or in the Alternative to Stay, and to Compel Arbitration, filed August 23, 2018. (Doc. 8.)

4

compel or enjoin arbitration or to determine the applicability or legality of arbitration shall be brought in the United States District Court, Southern District of New York," (Emp't Agr't 16), Respondent argued that Petitioners should have filed the motion in this court, (*see* Pet'rs' Mem. 7). On February 12, 2019, the Colorado Action was administratively closed pending resolution of the motion presently before me. *See Watson v. Crispin Porter & Bogusky LLC*, No. 18-cv-1658, Dkt. Entry 32 (D. Colo. Feb. 12, 2019).

## II. Procedural History

On August 22, 2018, Petitioners filed a motion to compel arbitration and to dismiss the Colorado Action, or, in the alternative, to stay the Colorado Action, in the Southern District of New York. (*See* Docs. 1, 6.)[5] In support of the motion, Petitioners submitted a declaration with exhibits, (Doc. 7), and a memorandum of law, (Doc. 8). On September 14, 2018, Respondent submitted a letter requesting that I adjourn consideration of Petitioners' motion until after a related motion was resolved in the Colorado Action. (Doc. 12.) Petitioners opposed the request on September 18, 2018, (Doc. 16), and, later the same day, Respondent submitted an additional letter in support of the request, (Doc. 17). On September 19, 2018, I entered an order denying Respondent's request because the motion in the Colorado Action did not ask the court to finally decide the same issues in the motion before me. (Doc. 18.) In the same order, I extended Respondent's time to respond to Petitioners' motion. (*Id.*) On September 28, 2018, Respondent filed a memorandum in opposition, which attached an affidavit with exhibits. (Doc. 20.) Petitioners filed a reply memorandum on October 11, 2018. (Doc. 21.) On February 13, 2019, Petitioners submitted a letter informing me that the Colorado Action had been administratively closed pending resolution of the motion presently before me. (Doc. 22.)

---

[5] Due to a filing error, Petitioners refiled the initial motion, (Doc. 1), on August 23, 2018, (Doc. 6).

5

## III. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides that an arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In creating "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within [its] coverage," the FAA was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' . . . .") (alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The "principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 344 (citation omitted). Notwithstanding the strong policy in favor of arbitration agreements, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see also Concepcion*, 563 U.S. at 339 ("[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.") (internal citations omitted).

In determining whether claims are subject to arbitration, courts in this Circuit consider "(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Am. Express Fin.*

6

*Advisors*, 672 F.3d at 128. If these two conditions are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When determining whether the parties have entered into a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (internal quotation marks and citations omitted).

**IV. <u>Discussion</u>**

Respondent does not dispute that he signed the Employment Agreement, which included the Arbitration Provision.[6] (*See generally* Resp't's Opp.)[7] He also does not dispute that his claims against Petitioners fall within the scope of the Arbitration Provision, which covers any dispute "arising out of, relating to, or in connection with [the Employment Agreement]." (*See* Emp't Agr't 15; *see generally* Resp't's Opp.)[8] Rather, Respondent argues that the parties did not

---

[6] Respondent asserts that he understood the initial offer letter to be the "actual contract" between CP+B and himself, (Resp't Decl. ¶ 9), even though the offer letter advised him that CP+B "will provide an employment agreement that will spell out the terms of your employment," (*id.* Ex. 1). Respondent also asserts that he believed signing the Employment Agreement, which contained "boilerplate language," was a "mere formality." (*Id.* ¶¶ 10–11.) According to Respondent, "[n]o one at CP+B discussed the Employment Agreement with [him], or recommended that [he] consult with an attorney," and that he "did [not] consult an attorney" or "knowingly agree to any limitation of liability, or a cap of [his] contractual damages." (*Id.* ¶ 11.) Although Respondent makes these factual assertions in his declaration and memorandum, (*id.* ¶¶ 9–11; Resp't's Opp. 5), he makes no legal argument, including citations to case law, that the Employment Agreement is not a valid contract based on those facts. To the contrary, Respondent does not allege that any Petitioner committed a wrongful act so as to call the legality of the Employment Agreement into question. Under the undisputed facts, Respondent is subject to the "general rule that 'a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 331 (S.D.N.Y. 2014) (omission in original) (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)).

[7] "Resp't's Opp." refers to Respondent Watson's Response to Petitioners' Motion to Dismiss His Amended Complaint, or in the Alternative to Stay, and to Compel Arbitration, filed September 28, 2018. (Doc. 20.)

[8] Indeed, Respondent's causes of action for wrongful discharge, (*see* Colo. Compl. ¶¶ 117–22), breach of contract, (*id.* ¶¶ 123–27), intentional infliction of emotional distress, (*id.* ¶¶ 110–16), intentional interference with prospective economic relations, (*id.* ¶¶ 98–109), defamation, (*id.* ¶¶ 67–87), violation of Title VII, (*id.* ¶¶ 46–56), and violation of the ADEA, (*id.* ¶¶ 34–45), are explicitly enumerated among the types of claims that must be submitted to arbitration, (*see* Emp't Agr't 16–17.)

7

enter into a valid agreement to arbitrate. (*See* Resp't's Opp. 8–13.) Respondent bases his validity challenge on two parts of the Employment Agreement: (1) the limitation on Petitioners' liability imposed by Sections 6(a) and 7(b); and (2) the fee-shifting clause of the Arbitration Provision. I consider each argument in turn.

### A. *Liability Limitation*

There are two types of validity challenges under § 2 of the FAA: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye,* , 546 U.S. at 444. "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). "'[A]n arbitration provision is severable from the remainder of the contract' and so 'a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.'" *Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011) (alteration in original) (quoting *Rent-A-Ctr.*, 561 U.S. at 70).

Sections 6(a) and 7(b) fall outside the Arbitration Provision, which is unambiguously titled "Arbitration." (*See* Emp't Agr't 5–6, 15.) Nonetheless, Respondent argues that his challenge based on Sections 6(a) and 7(b) falls into the first category of validity challenges identified in *Buckeye*—challenges to the validity of the agreement to arbitrate—because Section 6(a) refers to an arbitrator and incorporates Section 7(b) by reference. (*See* Resp't's Opp. 8–10.) Specifically, Section 6(a) states that, if Respondent is terminated for cause, and "the arbitrator appointed pursuant to [the Arbitration Provision] determines" that Respondent was not

8

terminated for cause, then the termination is determined to have been without cause, and Respondent's "rights and remedies will be governed by Section 7(b), in full satisfaction and in lieu of any and all other or further remedies [Respondent] may have," thereby limiting Petitioners' liability under any other legal claims. (Emp't Agr't 5.) Although Section 6(a) mentions arbitration, it is "found outside of the arbitration provision, and, as such, has no bearing on [CP+B] and [Respondent's] otherwise valid agreement to arbitrate." *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 427 (E.D.N.Y. 2014) (citing *Rent–A–Ctr.,* 561 U.S. at 70). Respondent's "argument that the Arbitration Provision is unconscionable because § [6(a)] of the Agreement limits [CP+B's] liability attacks the validity of the contract as a whole[,]" not the validity of the Arbitration Provision itself, and so "this issue must . . . be decided by the arbitrator." *Damato v. Time Warner Cable, Inc.*, No. 13–CV–994 (ARR)(RML), 2013 WL 3968765, at *8 (E.D.N.Y. July 31, 2013).

### B. *Fee-Shifting*

The fee-shifting clause, on the other hand, does appear in the Arbitration Provision. (*See* Emp't Agr't 16.) Specifically, the Arbitration Provision includes a clause under which the "prevailing party in any arbitration shall be entitled to receive its reasonable attorneys' fees and costs from the other party(ies) as awarded by the arbitrator." (*Id.*) Respondent argues that this provision is unconscionable because certain of his claims are brought under Title VII, (Resp't's Opp. 20–21), under which "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless." *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 178 (2d Cir. 2006) (internal quotation marks omitted).

Respondent asserts such an "attorney fee-shifting clause has been found to be unenforceable by New York courts." (Resp't's Opp. 13.) However, the only authority identified

by Respondent to support this assertion is *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010). In *Ragone*, "the Second Circuit suggested, *but did not hold*, that provisions of an arbitration agreement, . . . [including] a fee-shifting provision requiring the award of attorney's fees to the prevailing party[,] might be substantially unconscionable as applied to *certain discrimination claims*." *Arshad v. Transportation Sys., Inc.*, 183 F. Supp. 3d 442, 449 (S.D.N.Y. 2016) (emphasis added). Respondent does not identify a single federal or New York court that has invalidated an agreement to arbitrate based on the inclusion of a fee-shifting clause. Moreover, Respondent makes no attempt to explain why the fee-shifting clause invalidates the Arbitration Provision as applied to his other claims (e.g., his state common law claims). Finally, if an arbitrator were to award attorneys' fees to a prevailing employer on a Title VII claim, without first making a finding that the claim was frivolous, unreasonable or groundless, such an award would be subject to attack on the grounds that the arbitrator had "exhibited a 'manifest disregard of law.'" *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002) (quoting *Wilko v. Swan,* 346 U.S. 427, 436 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477 (1989)).

### C. *Motion to Dismiss or to Stay*

Petitioners' motion requests that I "dismiss[] or, in the alternative, stay[] the action brought by [Respondent] against Petitioners in the United States District Court for the District of Colorado." (Pet'rs' Mot. 1.)[9] Petitioners provide no authority demonstrating that I have the jurisdiction to enter an order imposing upon the docket management of another United States district court. To the contrary, under § 3 of the FAA, when a "suit or proceeding [is] brought in any of the courts of the United States[,]" if there is a validly arbitrable issue, "the court in which

---

[9] "Pet'rs' Mot." refers to Petitioners' Notice of Motion, filed August 23, 2018. (Doc. 6.)

such suit is pending . . . shall . . . stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3. The Colorado Action is not pending before me, so § 3 of the FAA does not authorize me to stay it.

Accordingly, Petitioners' motion to dismiss or to stay the Colorado Action is denied without prejudice to refile the motion in the Colorado Action.

### V. Conclusion

For the reasons set forth above, Petitioners' motion to compel arbitration is GRANTED, and Petitioner's motion to dismiss the complaint and stay proceedings is DENIED without prejudice. The Clerk of Court is respectfully directed to terminate the open motion at Document 6 and to close this case.

SO ORDERED.

Dated: October 10, 2019
     New York, New York

Vernon S. Broderick
United States District Judge